UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**TYRONE EARL WALTON**,

        Plaintiff,

  v.

**NICOLAS F. ARRENDONDO, MD,**
**medical surgeon; being sued individually**
**and in his official capacity**,

        Defendant.

Case No. 2:14-cv-00626-KI

OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

  Tryone Earl Walton
  #4421385
  82911 Beach Access Rd.
  Umatilla, OR 97882

      Pro se Plaintiff

  Christopher J. Mertens
  Miller, Mertens & Comfort, PLLC
  1020 N. Center Parkway, Suite B
  Kennewick, WA 99336

      Attorney for Defendant

KING, Judge:

Tyrone Earl Walton, an inmate at Two Rivers Correctional Institution ("T.R.C.I."), brings a civil rights complaint against Nicolas F. Arrendondo, M.D., the doctor who performed Walton's back surgery. Walton's only remaining claim is that Dr. Arrendondo failed to provide sufficient information to allow Walton to give informed consent, in violation of the Fourteenth Amendment. Pending before me is Dr. Arrendondo's Motion for Summary Judgment [68]. For the following reasons, I grant the motion and dismiss this case with prejudice.

## BACKGROUND

When Walton complained of back pain he was transferred from T.R.C.I. in Umatilla, Oregon to Good Shepherd Medical Center for an MRI on his lumbar spine. The MRI indicated a severe L5 radicular deficit thought to be at the L5 root. Walton was referred to Dr. Arrendondo, who examined Walton on May 28, 2010. Dr. Arrendondo explained to Walton that surgery was indicated; without surgery Walton's condition and symptoms would worsen. Specifically, Dr. Arrendondo mentioned symptoms such as weakness, numbness, pain, possible loss of bowel and bladder control, or loss of sexual function without surgery. Walton understood from Dr. Arrendondo that without surgery he would become paralyzed. Dr. Arrendondo recommended an anterior lumbar interbody fusion ("ALIF") which would be supplemented with a posterior pedicle screw fixation. Dr. Arrendondo warned Walton of the risk of retrograde ejaculation,[1] a condition occurring in about six percent of the patients undergoing this procedure. Walton understood surgery carried a six percent chance he would experience pain with ejaculation.

---

[1] "Retrograde ejaculation refers to the entry of semen into the bladder instead of going out through the urethra during ejaculation." WebMD, www.webmd.com/sexual-conditions/retrograde-ejaculation#8 (last visited Jan. 14, 2015).

Compl. ¶ 13. Walton informed Dr. Arrendondo he would have to think about whether to undergo the recommended surgery.

A few weeks later, Walton met with Dr. Fred I. Field, a vascular surgeon who would assist Dr. Arrendondo. Dr. Field is not a named defendant. Dr. Field thought Walton was a good candidate for the procedure. Walton's main concern was retrograde ejaculation, but Dr. Field also discussed other possible complications. He explained to Walton "that these risks are small but that we cannot guarantee absence of risks or complications." Walton Decl. Ex. 3, at 2. Walton attests Dr. Field refused to discuss alternatives to ALIF surgery, stating that it was the only surgery he would perform.

On or about July 2, 2010, Walton discussed the surgery with prison doctor, Greg Lytle, M.D., who is also not a named defendant. According to Walton, Dr. Lytle thought a six percent chance of retrograde ejaculation was nothing to be concerned about. Walton concluded he would proceed with the surgery.

Walton had a pre-operative appointment with Dr. Arrendondo on July 8, 2010, at which time Dr. Arrendondo again reviewed the risks of surgery. Specifically, Dr. Arrendondo identified the following risks: death, numbness, weakness, failure of fusion, failure of hardware, pain, retrograde ejaculation, and the need for additional surgery. The doctor wrote in the chart that he also discussed alternatives and the benefits of surgery. Walton signed an informed consent document acknowledging he had been informed of the treatment, the alternative treatments, and the risks and that he understood them. The document specifically mentioned: severe loss of blood, infection, cardiac arrest, death, permanent or partial disability, damage to vital organs such as the brain, heart, lung, liver and kidneys, and possible paralysis. Despite his

Page 3 - OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

signed statement to the contrary, Walton attests that Dr. Arrendondo "never discussed alternative solutions for surgery."  Walton Decl. ¶ 6.

On July 19, 2010, at the Providence St. Mary Medical Center, Dr. Arrendondo performed back surgery on Walton which involved an incision in his groin area.  Dr. Arrendondo did not view the inability to get an erection or to ejaculate as a material risk as he considered it an unlikely side effect.  Walton alleges in his complaint that he noticed his penis was swollen the day after his surgery.  He also alleges that as a result of the surgery he could not achieve an erection throughout 2010 and 2011.

Walton wrote Dr. Arrendondo on February 15, 2011 saying his back was "doing fine" but inquiring about his inability to achieve an erection.  Arrendondo Decl. Ex. D.  In a letter dated March 12, 2011, Dr. Arrendondo told Walton the problem he was having was a "less common complication" than the retrograde ejaculation and that it might take 24 months to recover fully.  Arrendondo Decl. Ex. E-1.  Dr. Arrendondo also mentioned the most common causes of erectile dysfunction are psychological and medication-related and suggested Walton talk with medical personnel at the prison about his stress levels and medications.  Walton alleges he has still not fully recovered.

Walton filed his complaint on April 10, 2014[2], alleging the risks of the surgery were not fully explained to him.  He states he would have declined surgery had Dr. Arrendondo told him he may not be able to obtain a full erection.  I dismissed Walton's Eighth Amendment deliberate

---

[2] Although the filing date on the court's docket is April 15, 2014, the "mailbox" rule applies.  *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009) (citing *Houston v. Lack*, 487 U.S. 266, 276 (1988)).  Under this rule, for statute of limitations purposes, a pro se section 1983 complaint is deemed filed the moment the prisoner delivers it to prison authorities for mailing.  Walton signed his complaint on April 10, 2014 and so it is deemed filed on that date.

Page 4 - OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

indifference claim on the ground that Walton failed to allege sufficient facts to support a reasonable inference that Dr. Arrendondo acted with deliberate indifference.

Dr. Arrendondo moves for summary judgment on two grounds: statute of limitations and the lack of any genuine issues of material fact on the elements of Walton's Fourteenth Amendment claim.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the court "must view the evidence on summary judgment in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party." *Nicholson v. Hyannis Air Service, Inc.*, 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (citation omitted).

## DISCUSSION

I.      Statute of Limitations

Dr. Arrendondo argues Walton's claim should be dismissed because Walton failed to timely file his complaint within the statute of limitations. Since Section 1983 contains no statute of limitations, Oregon's two-year personal injury statute of limitations governs the timeliness of a Section 1983 action in this court. *Sain v. City of Bend*, 309 F.3d 1134, 1139 (9th Cir. 2002);

ORS 12.110(1);³ *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 580 (9th Cir. 2012) (applying Oregon's "residual two-year statute of limitations for personal injury actions" to a Section 1983 action). "[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law "a claim accrues . . . when the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and the cause of that injury." *Bonneau*, 666 F.3d at 581 (quotation and citations omitted).

The question, then, is when Walton knew or had reason to know Dr. Arrendondo had given him incomplete information. *See TwoRivers v. Lewis*, 174 F.3d 987, 992 (9th Cir. 1999) (claim accrues when plaintiff knows or has reason to know of the injury). Dr. Arrendondo contends Walton's cause of action accrued on the day following surgery, when Walton noticed swelling of the affected area, making his complaint due no later than July 20, 2012. Compl. ¶¶ 24-27.

Viewing the facts in the light most favorable to Walton, I accept that he did not know of any unexpected side effects in the days following surgery. Pl.'s Mem. 4 (he was in "severe pain and barely able to walk. And spent the first few days after surgery in his bunk."). Nevertheless, Walton unquestionably knew he could not achieve an erection or ejaculate as of the date he sent a letter to Dr. Arrendondo reporting these problems and inquiring about their likelihood of

---

³ Both parties cite ORS 12.110(4), the statute of limitations applicable to medical malpractice claims, but federal courts apply the residual personal injury statute of limitations in a Section 1983 action, rather than assess each claim to determine the applicable statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 275 (1985) ("We conclude that the statute is fairly construed as a directive to select, in each State, the one most appropriate statute of limitations for all § 1983 claims.").

Page 6 - OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

resolving.  His letter was dated February 15, 2011.  Walton did not file his lawsuit until more than two years after he knew or had reason to know of the injury.  *See Heggem v. Congdon*, No. C08-0070-MJP, 2008 WL 4702741, at *3 (W.D. Wash. Oct. 21, 2008) (constitutional informed consent claim dismissed because "plaintiff had reason to know of any injury arising out of the manner in which Dr. Congdon managed and conducted plaintiff's chemotherapy treatment [during those treatments]").

Walton argues the statute should be tolled.  He argues he first discovered his injury when he followed Dr. Arrendondo's letter advice and waited the additional 24 months to see if he would heal.  Relying on ORS 12.110(4), the statute of limitations relevant to medical malpractice claims, he contends Dr. Arrendondo's assurances to wait and see constituted "fraud, deceit or misleading representation" making the statute of limitations run from the date the fraud, deceit or misleading representation is discovered or should have been discovered.  ORS 12.110(4).[4]

It is true state law governs not only the length of the limitations period, but also the "closely related questions of tolling and application[.]"  *Wilson*, 471 U.S. at 268-69.  Even

---

[4] The statute reads in its entirety:

> An action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered.  However, notwithstanding the provisions of ORS 12.160 [the disability tolling statute], every [malpractice action] shall be commenced within five years from the date of treatment, omission or operation upon which the action is based or, if there has been no action commenced within five years because of fraud, deceit or misleading representation, then within two years from the date such fraud, deceit or misleading representation is discovered or in the exercise of reasonable care should have been discovered.

ORS 12.110(4).

Page 7 - OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

assuming ORS 12.110(4) is sufficiently "'closely related' to the borrowed statute of limitation" to toll the limitations period, Walton's reliance on it is inapposite for several reasons. *Bonneau*, 666 F.3d at 580. First, the "fraud, deceit or misleading representation" provision "is an exception to the five-year statute of repose found in the second sentence of ORS 12.110(4). By its terms, the exception is relevant only when 'there has been no action commenced within five years [of the treatment] because of fraud, deceit or misleading representation.'" *Gaston v. Parsons*, 318 Or. 247, 252 n.5, 864 P.2d 1319 (1994) (quoting ORS 12.110(4)). This case was filed within five years of the surgery.

Further, under Oregon law, in the context of an alleged violation of informed consent, "plaintiff's discovery was complete when he perceived his difficulties and knew that his doctor had failed to warn him of these particular problems–*permanent or not*." *Hoffman v. Rockey*, 55 Or. App. 658, 664, 639 P.2d 1284, *rev. denied,* 292 Or. 722, 644 P.2d 1131 (1982) (emphasis added)*; see also Gaston v. Parsons*, 117 Or. App. 555, 558, 844 P.2d 941 (1993) (doctor's assurances relevant to timeliness of medical malpractice claim, but court did not consider them in context of informed consent claim), *aff'd on other grounds,* 318 Or. 247, 864 P.2d 1319. Any assurances Dr. Arrendondo gave Walton after the surgery, and whether they constitute "fraud, deceit or [a] misleading representation," are irrelevant. Walton knew at least as of February 15, 2011 that he suffered from a condition Dr. Arrendondo had not warned him about. Consequently, Dr. Arrendondo's assurances do not toll the statute of limitations.

In sum, Walton's claim is not tolled under ORS 12.110(4). Walton's claim accrued under federal law when he discovered he was unable to achieve an erection, which occurred at the latest on February 15, 2011. He unquestionably knew at that time that Dr. Arrendondo had not warned

Page 8 - OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

him of that risk.  The required filing date for the complaint was February 15, 2013.  Walton did not file his complaint until April 10, 2014, more than a year too late.  His claim is time-barred.

II.     Fourteenth Amendment Informed Consent Claim

Even if Walton's claim is not time-barred, Dr. Arrendondo is entitled to summary judgment on the merits of Walton's Fourteenth Amendment claim.  The Fourteenth Amendment protects the right to be "free from unjustified intrusions into the body." *See Benson v. Terhune*, 304 F.3d 874, 884 (9th Cir. 2002) (describing Fourteenth Amendment right to informed consent) (citing *Riggins v. Nevada*, 504 U.S. 127, 134 (1992)).  This includes the right "to refuse unwanted medical treatment and to receive sufficient information to exercise these rights intelligently."  *Id.* (citing *White v. Napoleon*, 897 F.2d 103, 111 (3d Cir. 1990)); *see also Rainwater v. Alarcon*, 268 F. App'x 531, 534 (9th Cir. 2008) (sufficient question of fact as to whether prisoner was provided with information allowing him to give informed consent for treatment).  Indeed, "[a] prisoner's right to refuse treatment is useless without knowledge of the proposed treatment.  Prisoners have a right to such information as is reasonably necessary to make an informed decision to accept or reject proposed treatment, as well as a reasonable explanation of the viable alternative treatments that can be made available in a prison setting."  *White*, 897 F.2d at 113*; see also Pabon v. Wright*, 459 F.3d 241, 250 (2d Cir. 2006) ("[T]here exists a liberty interest in receiving such information as a reasonable patient would require in order to make an informed decision as to whether to accept or reject proposed medical treatment.").

Relying on the Second Circuit's *Pabon* decision, Dr. Arrendondo insists he cannot be held liable unless Walton pleads and proves the doctor acted with deliberate indifference to

Page 9 - OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

Walton's right to refuse treatment; simple negligence is insufficient. *Pabon*, 459 F.3d at 250 ("[i]nadvertent failures to impart medical information cannot form the basis of a constitutional violation" and "[t]he simple lack of due care does not make out a violation of either the substantive or procedural aspects of the Due Process Clause of the Fourteenth Amendment"). While there is a dearth of Ninth Circuit precedent in this specific area of constitutional law, there is support for the doctor's position in the Ninth Circuit's reliance on *Pabon* in *Rainwater*, as well as U.S. Supreme Court guidance establishing that "lack of due care" is insufficient to make out a Fourteenth Amendment Due Process Clause violation. *Rainwater*, 268 F. App'x at 534 n.2; *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986) (lack of due care "does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent"); *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) ("liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process"). As a result, I agree Walton must raise a genuine issue of material fact demonstrating Dr. Arrendondo acted with the requisite state of mind.

After reviewing all the evidence, and drawing all inferences in Walton's favor, I accept that Dr. Arrendondo failed to inform Walton about the risk of erectile dysfunction,[5] and failed to

---

[5] At least according to the Second and Third Circuits, a reasonable person would have to find this missing information necessary to a decision to proceed with surgery. *Pabon*, 459 F.3d at 250; *White*, 897 F.2d at 113.

discuss alternatives to surgery.[6] However, Walton offers no evidence that Dr. Arrendondo acted with deliberate indifference to Walton's right to refuse treatment.

Specifically, the evidence shows Walton met with Dr. Arrendondo twice before committing to surgery–once on May 28 and once on July 8, 2010. Walton concedes that at the hour-long meeting on May 28, Dr. Arrendondo informed him he could become paralyzed without surgery. He concedes Dr. Arrendondo identified the possible side effects of surgery mentioned in the medical reports. Additionally, Walton concedes Dr. Arrendondo discussed the possibility of retrograde ejaculation as a possible risk of the ALIF surgery. *Id*. (According to the medical record, Dr. Arrendondo "discussed with him at length" the six percent chance of retrograde ejaculation as Walton "is a relatively young male[.]"). Walton does not dispute Dr. Arrendondo reiterated these risks on July 8, 2010. Walton also does not dispute that he signed an informed consent document, in which he agreed he had been informed of the risks and of alternative treatments. Additionally, Dr. Arrendondo attests, "The inability to get an erection or to ejaculate after surgery was considered an unlikely side effect of the surgery and not considered a material risk, but *was much more likely if he did not get the surgery*." Arrendondo Decl. ¶ 23 (emphasis added). Walton has no evidence to the contrary.

In response, Walton relies on (1) Dr. Arrendondo's letter as evidence of deliberate indifference and (2) "Dr. Arrendondo's refusal to pursue an alternative surgery that was less

---

[6] Dr. Arrendondo wrote in Walton's chart that he discussed "the possible surgical options" with Walton. Walton attests "Dr. Arrendondo never discussed alternative solutions for surgery." Walton Decl. ¶ 5. It is unclear whether Walton contends Dr. Arrendondo never identified other kinds of *surgical* options, or instead never discussed *non-surgical* alternatives. At least in the Third Circuit, a prisoner is required to demonstrate he did not receive "a reasonable explanation of the viable alternative treatments available to [him] in the prison setting." *White*, 897 F.2d at 113.

Page 11 - OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

risky." Pl.'s Mem. 7. As an initial matter, Dr. Arrendondo wrote the letter after the surgery, so its relevance to show Dr. Arrendondo's state of mind in counseling Walton before the surgery is tenuous. However, even viewing the letter in the light most favorable to Walton, there is nothing from which a trier of fact could find Dr. Arrendondo acted with deliberate indifference to Walton's right to refuse medical treatment. Rather, Dr. Arrendondo wrote Walton back promptly, expressed feeling "troubled" by Walton's symptoms, agreed that Walton's problem was a "less common complication," and conceded he would not be optimistic of recovery after 24 months. Dr. Arrendondo referred Walton to the prison physician for further consultation. Walton disputes the doctor's advice that his nerves could heal in 24 months, but Walton offers no evidence to contradict the doctor's opinion. I find no reasonable trier of fact could read the letter as evidence that Dr. Arrendondo was coercive, substantially indifferent, knew of and disregarded a substantial risk to Walton, or acted with the intent to induce Walton to undergo surgery. *See also Dull v. Ylst*, 24 F.3d 245, at *3 (9th Cir. 1994) (unpublished) (in context of Eighth Amendment claim, prisoner "failed to present any evidence that an alleged failure to inform of the precise side effects that he suffered would prove that the defendants were deliberately indifferent to his medical needs").

Further, Walton offers no evidence that Dr. Arrendondo refused to pursue alternatives. Although Walton attests Dr. Arrendondo never discussed "alternative solutions for surgery[,]" it was Dr. Field who allegedly told Walton he would not consider any alternatives to the ALIF procedure. Walton Decl. ¶¶ 6, 8. Walton presents no evidence Dr. Arrendondo refused to

consider surgical options other than the ALIF procedure.[7]  Dr. Field is not a defendant and Walton offers no evidence Dr. Field spoke for Dr. Arrendondo.

In short, Walton's evidence suggests nothing more than negligence, if that.  *See Cardona v. Syverson*, No. 2:11-cv-1680 TLN KJN P, 2013 WL 3941019, at *12 (E.D. Cal. July 30, 2013) (failure to secure informed consent before performing biopsy, resulting in puncture of lung, supported no more than negligence claim); *see also Martin v. Beck*, No. 2:12-cv-0421-JFM (PC), 2012 WL 4208303 (E.D. Cal. Sept. 19, 2012) (surgery to fix double-stream urinary flow caused retrograde ejaculation, which plaintiff says he was not warned about; allegations of failure to obtain informed consent were at most negligence).[8]

I dismiss Walton's Fourteenth Amendment claim.

///

///

---

[7] In fact, the evidence is to the contrary.  Dr. Arrendondo's May 28, 2010 note reads: "We did discuss the possible surgical options and he would like to weigh those and decide after some consideration.  The surgical option which I feel would be most beneficial for him would be an anterior lumbar interbody fusion . . . ."  Arrendondo Decl. Ex. A-5.

[8] In Oregon, informed consent requires disclosure of "material risks" if the patient asks for a "more detailed explanation."  ORS 677.097(2).  Further, a plaintiff must show that his injury resulted from the wrongful conduct.  "The failure properly to obtain the patient's consent 'causes' the alleged harm if after a proper explanation the patient would not have consented to the procedure (*unless, of course, the harm would have occurred without the procedure*)."  *Wenger v. Or. Urology Clinic, P.C.*, 102 Or. Ap. 665, 668-69, 796 P.2d 376 (1990) (quoting *Arena v. Gingrich*, 305 Or. 1, 4, 748 P.2d 547 (1988)) (emphasis added).

## CONCLUSION

For the foregoing reasons, Dr. Arrendondo's Motion for Summary Judgment [68] is granted.  This action is dismissed with prejudice.

IT IS SO ORDERED.

DATED this      20th     day of January, 2016.

                                      /s/ Garr M. King
                                    Garr M. King
                                    United States District Judge